William Levin, Esq. (SBN 98592)
Laurel Simes, Esq. (SBN 134637)
Rachel Abrams, Esq. (SBN 209316)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
Telephone:     (415) 426-3000
Facsimile:     (415) 426-3001

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| DIANE CUTRIGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>COLOPLAST INCORPORATED; COLOPLAST MANUFACTURING US, LLC; COLOPLAST A/S, ET AL.,<br><br>    Defendants. | CASE NUMBER<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br>**[PRODUCTS LIABILITY]**<br><br>**1.     Strict Liability-Failure to Warn**<br>**2.     Strict Liability**<br>**3.     Negligence**<br>**4.     Breach of Implied Warranty**<br>**5.     Breach of Express Warranty**<br>**6.     Fraud**<br>**7.     Fraud by Concealment**<br>**8.     Negligent Misrepresentation**<br>**9.     Loss of Consortium** |

## PARTIES

1.   Plaintiff Diane Cutright was and continues to be a resident of the state of California.

2.   Defendant Coloplast Corp. ("Coloplast Corp.") is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 601 West River Road North, Minneapolis, Minnesota 55411. Coloplast Corp. is a wholly-owned U.S. sales and marketing subsidiary of Coloplast A/S, a Denmark corporation.

3.   Defendant Coloplast A/S is a corporation organized and existing under the laws of the Kingdom of Denmark maintaining its principal place of business at Holtedam 1, Humlebaek 3050, Kingdom of Denmark.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

4.   Defendant Coloplast Manufacturing US, LLC is a limited liability corporation organized and existing under Delaware, law maintaining its principal place of business as 1940 Commerce Drive, North Mankato, MN 56002. Its registered office is 560 Park Street, #6, St. Paul, Minnesota 55103. Coloplast Manufacturing US, LLC is a wholly-owned subsidiary of Coloplast Corp.

5.   Coloplast Corp., Coloplast A/S, and Coloplast Manufacturing US, LLC, are collectively referred to herein as "Coloplast."

6.   Defendants, JOHN DOES 1-20 (fictitious names) are entities and/or persons who are liable to Plaintiffs, but who have not yet been identified despite reasonable due diligence on the part of Plaintiffs.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated or have their principal places of business in states other than the state in which the named Plaintiff resides.

8.   Defendants have significant contacts with the Northern District of California such that they are subject to the personal jurisdiction of the Court in said district.  A substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in the Northern District of California. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district.

## FACTUAL ALLEGATIONS

9.   At all times relevant, Defendants were engaged in the business of placing medical devices, including the Restorelle Mesh ("Restorelle" or the "Product") into the steam of commerce by designing, manufacturing, marketing, packaging, labeling, and selling such devices.

10. The Restorelle is a product targeted at women who suffered from pelvic organ prolapse.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

11. Pelvic Organ Prolapse is a type of disorder by which one or more of the pelvic organs drop from their normal position.

12. This product contains a monofilament polypropylene mesh intended to treat pelvic organ prolapse.

13. In October 2008 and July 2011, the Food and Drug Administration ("FDA") issued warnings regarding the complications and risks associated with Pelvic Mesh Products, including the Restorelle.

14. Defendants knew or should have known that the Products unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks.

15. Despite claims that polypropylene mesh is inert, the scientific evidence shows that this material as implanted in Plaintiff is biologically incompatible with human tissue and when used as a woven or knitted alloplastic textile prosthetic mesh for pelvic floor repair, polypropylene and other surgical polymers promote a severe foreign body reaction and chronic inflammatory response in a large subset of the population implanted with Defendants' pelvic mesh products, including Restorelle.

16. The Product was unreasonably susceptible to degradation and fragmentation inside the body; shrinkage or contraction inside the body; intense foreign body reaction; chronic inflammatory response; chronic wound healing; chronic infections in and around the mesh fibers; nerve entrapment in the collagen scar formation. Defendants knew or should have known of these serious risks and should have, therefore, warned physicians and patients regarding these risks; to the extent they were known or knowable.

17. Defendants omitted and downplayed the risks, dangers, defects, and disadvantages of the Products, and advertised, promoted, marketed, sold and distributed the Product as safe medical devices when Defendants knew or should have known that the Product was not safe for its intended purposes, and that the Product would cause, and did cause, serious medical problems, and in some patients, including Plaintiff, catastrophic injuries. Further, while some of the problems associated with the

- 3 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Product was made known to physicians, the magnitude and frequency of these problems were not disclosed and were hidden from physicians.

18. Contrary to Defendants' representations and marketing to the medical community and to the patients themselves, the Product has high rates of failure, injury, and complications, fails to perform as intended, requires frequent and often debilitating re-operations, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiff, making them defective under the law.

19. The specific nature of the Product's defects includes, but is not limited to, the following:

    a. The use of polypropylene in the Product and the adverse tissue reactions and host defense response that result from such material, causing adverse reactions and serious, permanent injuries including, but not limited to, painful recurrent erosions, painful infections and associated intractable pain;

    b. The design of the Product to be inserted into and through an area of the body that is blood vessel rich, nerve dense, and bacteria laden leading to excessive blood loss and vascular damage, permanent nerve injury and associated chronic, intractable neuropathic pain, contaminated permanently-implanted mesh causing chronic infections, subclinical infections and biofilms, enhanced chronic inflammatory response, chronic wound healing with tissue destruction, as well as numerous other adverse reactions and serious and permanent injuries;

    c. Biomechanical issues with the design of the Product which result in a non-anatomic condition leading to contraction or shrinkage of the mesh inside the body, that in turn causes surrounding tissue to become eroded, inflamed, fibrotic and infected, resulting in serious and permanent injury;

    d. The propensity of the mesh design characteristics of the Product for plastic deformation when subjected to tension both during implantation and once implanted inside the body

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

which causes the mesh, or portions thereof, to be encapsulated in a rigid scar plate which

leads to nerve entrapment, bacterial entrapment, tissue destruction, enhanced

inflammatory and fibrotic response and chronic pain;

e. The propensity of the Product to become rigid and inflexible, causing them to be

improperly mated to the delicate and sensitive areas of the vagina and pelvis where they

are implanted, and causing discomfort and pain with normal daily activities that involve

movement in the pelvic region (e.g., intercourse, defecation, walking);

f. The propensity of the Product for degradation or fragmentation over time, which causes

an increased surface area that leads to enhanced chronic inflammatory and fibrotic

reaction, causes a "barbed wire" or "saw blade" effect by the fragmented surface

"sawing" through the tissue, leads to bacteria harboring in the fragmented, peeled and

split fiber surface which in turn leads to chronic infections at the mesh surface, and

results in continuing injury over time; and

g. The inability of surgeons to effectively treat many of these conditions due to the

integration of the mesh into the pelvic tissue and thus the inability to safely remove or

excise the mesh once a complication occurs.

20. The Product is also defective due to Defendants' failure to adequately warn or instruct Plaintiff

and/or her health care providers of subjects including, but not limited to, the following:

a. The Product's propensities to contract, retract, and/or shrink inside the body;

b. The Product's propensities for degradation, fragmentation and/or migration;

c. The Product's inelasticity preventing proper mating with the pelvic floor and vaginal

region;

d. The frequency and manner of transvaginal mesh erosion or extrusion;

e. The risk of chronic inflammation resulting from the Product;

f. The risk of chronic infections resulting from the Product;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

g. The risk of permanent vaginal or pelvic scarring as a result of the Product;

h.  The risk of de novo urinary dysfunction;

i. The risk of de novo dyspareunia or painful sexual relations;

j. The risk of recurrent, intractable pelvic pain and other pain resulting from the Product;

k. The need for corrective or revision surgery to adjust or remove the Product which in some cases is not feasible nor possible;

l. The severity of complications that could arise as a result of implantation of the Product;

m.  The hazards associated with the Product;

n. The Product's defects described herein;

o. Treatment of pelvic organ prolapse with the Products is no more effective than feasible, available and safer alternatives;

p. Treatment of pelvic organ prolapse with the Product exposes patients to greater risk than feasible, available and safer alternatives;

q. Treatment of pelvic organ prolapse with the Product makes future surgical repair more difficult than feasible, available and safer alternatives;

r. Use of the Product puts the patient at greater risk of requiring additional surgery than feasible, available and safer alternatives;

s. Removal of the Product due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

t. Complete removal of the Product may not be possible and may not result in complete resolution of the complications, including pain; and

21. The Product implanted in Plaintiff was in the same or substantially similar condition as they were when they left Defendants' possession, and in the condition directed by and expected by Defendants.

///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## PLAINTIFF'S EXPERIENCE AND INJURIES

22. On October 27, 2016, Plaintiff Diane Cutright had Defendants' Restorelle implanted by Dr. Pisani at El Camino Hospital in Mountain View, California.

23. The Product was implanted with the intention of treating the Plaintiff for pelvic organ prolapse, for which the Defendants marketed and sold the product.

24. On December 12, 2016, Plaintiff underwent a revision procedure to remove the mesh.

25. After, and as a result of, the implantation of the Restorelle, Plaintiff Diane Cutright suffered serious bodily injury, including, but not limited to, exteme pain, infection, and the need to removal the mesh.

26. Plaintiff's injuries would not have occurred but for the defective nature of the products implanted and/or Defendants' wrongful conduct.

27. Plaintiff Diane Cutright has experienced significant mental and physical pain and suffering,  has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

## CASUES OF ACTION

## COUNT I: NEGLIGENCE

28. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

29. At all times relevant herein Defendants had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, design, and provide proper warnings and instructions for implanting the Product.

30. Defendants breached those duties in that they were negligent in designing, manufacturing, marketing, labeling, packaging, providing instructions for use of, and selling the product and in failure to warn the Plaintiff and/or her physicians about the defective nature of the Product.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

31. Plaintiff's injuries and damages are a direct and proximate result of Defendants' negligence, and willful disregard for Plaintiff's' safety.

## COUNT II: STRICT LIABILITY- DESIGN DEFECT

32. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

33. The Product implanted in Plaintiff was not reasonably safe for its intended use and was defective as described above with respect to its design.

34. As a direct and proximate result of the Products' aforementioned defects, Plaintiff has experienced significant pain and suffering, has sustained permanent injury, and has undergone medical treatment and will likely undergo future medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

35. Defendants are strictly liable to the Plaintiff named in the complaint for designing, manufacturing, marketing, labeling, packaging and selling a defective product(s).

## COUNT III: STRICT LIABILITY – FAILURE TO WARN

36. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

37. The Product implanted in Plaintiff was not reasonably safe for its intended uses and was defective as described herein as a matter of law due to tits lack of appropriate and necessary warnings.

38. As a direct and proximate result of the Product's aforementioned defects as described herein, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures,  has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1
2

39. Defendant is strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling a defective product.

3

**COUNT IV: DISCOVERY RULE, TOLLING, AND FRAUDULENT CONCEALMENT**

4
5

40. Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

6
7
8

41. Plaintiff asserts all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, and fraudulent concealment.

9
10
11
12
13

42. Plaintiff pleads that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortious nature of the wrongdoing that caused the injury.

14
15
16
17
18
19
20

43. Despite diligent investigation by Plaintiff, including Plaintiffs, into the cause of their injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages, and their relationship to the Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiff's claims. Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

21
22
23
24
25
26
27
28

44. The running of the statute of limitations in this cause is tolled due to equitable tolling. Defendant(s) are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiff and Plaintiff's physicians of the true risks associated with the Products. As a result of Defendants' fraudulent concealment, Plaintiff and Plaintiff's physicians were unaware, and could not have known or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendant(s).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**COUNT V: PUNITIVE DAMAGES**

45. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

46. Defendants sold their Product to the Healthcare providers of the Plaintiff and other healthcare providers in the state of implantation and throughout the United States without doing adequate testing to ensure that the Product was reasonably safe for implantation in the female pelvic area.

47. Defendants sold the Product to the Plaintiff's health care providers and other health care providers in the state of implantation and throughout the United States in spite of their knowledge that the Products can shrink, disintegrate and/or degrade inside the body, and cause the other problems heretofore set forth in this complaint, thereby causing severe and debilitating injuries suffered by Plaintiff and numerous other women.

48. Defendants ignored reports from patients and health care providers throughout the United States and elsewhere of the Products' failures to perform as intended, which lead to the severe and debilitating injuries suffered by and numerous other women. Rather than doing adequate testing to determine the cause of these injuries, or to rule out the Product's designs or the processes by which the Product is manufactured as the cause of these injuries, Defendants chose instead to continue to market and sell the Product as safe and effective.

49. Defendants knew the Product was unreasonably dangerous in light of tits risks of failure, pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of the Product, as well as other severe and personal injuries which were permanent and lasting in nature.

50. Defendants withheld material information from the medical community and the public in general, including the Plaintiff, regarding the safety and efficacy of the Product.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

51. Defendants knew and recklessly disregarded the fact that the Product caused debilitating and potentially life altering complications with greater frequency than feasible alternative methods and/or products used to treat pelvic organ prolapse.

52. Defendants misstated and misrepresented data and continue to misrepresent data so as to minimize the perceived risk of injuries caused by the Product.

53. Notwithstanding the foregoing, Defendants continue to aggressively market the Product to consumers, without disclosing the true risks associated with the Product.

54. Defendants knew of the Product's defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the Products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff.

55. Defendants continue to conceal and/or fail to disclose to the public, including Plaintiff, the serious complications associated with the use of the Product to ensure continued and increased sales of the Product.

56. Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly and severally and requests compensatory damages, together with interest cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

1. Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, health and medical care costs, together with interest and costs as provided by law;

2. Restitution and disgorgement of profits;

3. Reasonable attorneys' fees;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

4.  The costs of these proceedings;

5.  All ascertainable economic damages;

6.  Punitive damages;

7.  Such other and further relief as this Court deems just and proper.

Plaintiffs hereby demand a trial by jury as to all issues.

Dated:  December 12, 2018                **LEVIN SIMES ABRAMS LLP**


/s/ Rachel Abrams
Rachel Abrams
Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL